**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ANTHONY G. MARTIN,**

                     **Plaintiff,**

**-vs-**                                    **Case No. 6:05-cv-971-Orl-22KRS**

**BREVARD COUNTY PUBLIC SCHOOLS,**
**an entity of the State of Florida,**

                       **Defendant.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 27)** |
| **FILED:** | **June 30, 2006** |

**I.    PROCEDURAL HISTORY.**

This case arises from a dispute regarding whether Defendant Brevard County Public Schools (School Board) interfered with Plaintiff Anthony G. Martin's right to take leave under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 260, *et seq.*, and whether the School Board retaliated against Martin for taking FMLA leave. Doc. No. 2. The School Board filed a motion for summary judgment

on both the interference and retaliation causes of action. Doc. No. 27. In support of the motion, it submitted a memorandum of law, doc. no. 28, and the following documents:

- Excerpts of the Deposition of Anthony Martin;

- Excerpts of the Deposition of Michael Degutis;

- Excerpts of the Deposition of Joy Salamone (Salamone Dep.);

- Excerpts of the Deposition of Richard A. DiPatri, Ed.D. (DiPatri Dep.);

- Performance Appraisals and evaluations of Martin's work;

- Various memoranda between and among Deguitis, Salamone and Martin;

- Excerpts from the School Board's Employee Handbook and School Board District Bylaws and Policies;

- May 10, 2002, letter from Richard A. DiPatri, Ed.D.;

- Documents regarding Martin's available leave and leave requests, including related emails;

- June 21, 2004, letter from Degutis to Martin;

Doc. No. 27 (see exhibit index at doc. no. 27-2).[1]

Martin filed a memorandum in opposition to the motion. Doc. No. 28. In support of his response, Martin relied on some of the documents submitted by the School Board and the following additional documents:

- Sworn Affidavit of Anthony Martin (Martin Aff.);

---

[1] The School Board also submitted an unsworn report of an investigation conducted by Tomattco Investigations, Inc. Martin objects to this report because it is hearsay. Because the report is not a sworn statement or otherwise admissible evidence, *see* Fed. R. Civ. P. 56(c), I have not considered it in preparing this Report and Recommendation.

- Complete Deposition of Anthony Martin (Martin Dep.);

- Complete Deposition of Michael Degutis (Degutis Dep.);

- Memoranda written by Martin to Salamone;

Doc. No. 29.

The Honorable Anne C. Conway, presiding district judge, referred the motion to me for issuance of a Report and Recommendation. Doc. No. 32.

## II.   STATEMENT OF FACTS.

The School Board is an employer within the definition of the FMLA. Doc. No. 3 ¶¶ 6, 7; Doc. No. 4 ¶¶ 6, 7.

Martin was hired by the School Board in January 2000 as the payroll supervisor. Martin Dep. at 7.[2] He was responsible for processing payroll in the computer system and answering payroll related questions. He supervised eight payroll clerks. *Id.*   His last contract with the School Board was due to expire on June 30, 2004. Degutis Dep. at 51.[3]

While working for the School Board, Martin lived with his wife and his daughters, Brenna and Brittany, and Brittany's daughter, Hannah, who was born in November 2003. Martin Dep. at 5-6, 49, 58. Brittany was a student and in the Army Reserves. Martin Dep. at 49. Because Brittany was a single mother, Martin provided Brittany and Hannah with a home, car, food, and expense money, as well as health insurance. Martin Aff. ¶ 3.

---

[2] I will use the internal pagination of the depositions for purposes of citations to these documents.

[3] While working for the School Board, Martin continued to operate an air conditioning and heating business until he sold it in January 2005. Martin Dep. at 12-13, 16. He performed work for that company occasionally on weekends and some evenings. *Id.* at 16, 18.

Michael Degutis, Assistant Superintendent of Finance for the School Board, supervised Martin. Degutis Dep. at 5-6; Martin Dep. at 46. Degutis described Martin's job performance as "erratic." Degutis Dep. at 5. Degutis testified as follows: "[Martin] would perform well at certain points, and then not perform well on other points. And . . . the poor performance would be things such as – he's not being a team player, being a poor supervisor, not working well with people . . . under his charge and other departments, and things like that." Degutis Dep. at 6.[4] Martin's performance appraisal for the 2002-2003 school year reflected that he was "performing at a professional level" in all categories. Degutis Dep. at 81 & ex. 6. Richard A. DiPatri, Ed.D., Superintendent of the School Board, wrote a letter of recommendation for Martin dated May 10, 2002. DiPatri Dep. at 8 & ex. 1. Degutis testified that Martin's work declined in subsequent years. Degutis Dep. at 81.

At some point, Martin complained to Joy Salamone, in the human resources department, that Degutis was treating him differently from other supervisors and filed a formal grievance. Salamone Dep. at 14-15. After investigating the matter, Salamone found no evidence of disparate treatment of Martin. *Id.* at 16.

Degutis prepared an interim performance evaluation of Martin in April 2004. Degutis Dep. at 48. In this form, Degutis ranked Martin's performance as "performing at a professional level" in three areas, "needs improvement in professional performance" in five areas, and "unsatisfactory level of performance" in two areas. Degutis Dep. at 49; Martin Dep. ex. 1. Degutis also gave Martin a Leadership Development Improvement Plan. Degutis Dep. at 48; Martin Dep. at 13 & ex. 1. Under

---

[4] In his deposition, Degutis gave specific examples of problems with Martin's job performance. *See, e.g.*, Degutis Dep. at 6-16, 30-31, 38-41.

this plan, Martin was given thirty days, through June 1, 2004, "to demonstrate significant progress as outlined in the improvement plan." Martin Dep. ex. 1.

Meanwhile, sometime before April 19, 2004, Martin's daughter Brittany was informed that her Army Reserve unit would be called to active duty for service overseas. Martin Dep. at 49-50 & ex. 3; Martin Aff. ¶ 2. On April 19, 2004, Martin wrote an email to his staff indicating that he would be taking leave to care for his granddaughter for twelve weeks beginning May 7, 2004. Martin Dep. at 52 & ex. 3.

Martin submitted to the School Board a Leave of Absence Request dated April 29, 2004, for FMLA leave from May 7, 2004, through June 30, 2004.[5] Martin Dep. at 52 & ex. 2. Degutis signed the form approving this leave. *Id.*; Martin Aff. ¶ 1. Martin avers that he "relied on [Degutis's] approval as proof that [he] was FMLA eligible and that [his] reasons were FMLA-qualifying." Martin Aff. ¶ 7. Martin further avers that had the FMLA leave not been approved, or if it had subsequently been rescinded, he would not have taken FMLA leave. Martin Aff. ¶ 8.

Martin also prepared a memorandum to Degutis, dated April 29, 2004, notifying him that Martin would take FMLA leave beginning on May 7, 2004 to care for his granddaughter. Martin wrote as follows: "Due to unforeseeable events, I have day-to-day responsibility for caring for my granddaughter and stand '*in loco parentis*.' These responsibilities include caring for and financially

---

[5] Martin also submitted an FMLA Leave of Absence Request for July 1, 2004 through August 2, 2004. A handwritten note on this form reads as follows: "Not Approvable as TM will not be contracted as of 7/1/2004." Martin Dep. ex. 2. Martin testified that Degutis required him to submit two leave requests because June 30, 2004, was the end of the fiscal year, and leave could not be approved on a single form for two fiscal years. Martin Dep. at 63-64; Martin Aff. ¶ 1.

supporting her. She is less than 12-months old . . . . Her birth date was November 24, 2003." Martin Dep. ex. 2.[6]   Martin personally delivered the memorandum to Degutis. Degutis Dep. at 59-60.

After receiving Martin's memorandum, Degutis consulted with Salamone in the human resources department, Bonnie Mozingo, the director of compensation and benefits, and Mr. Berry, the deputy superintendent. Degutis Dep. at 60. These individuals told Degutis that if Martin could not fulfill his improvement plan due to taking FMLA leave that his contract would not be renewed. Degutis Dep. at 60-63. Degutis was directed to advise Martin in writing that taking FMLA leave would result in his contract with the School Board not being renewed. Degutis Dep. at 64.

At some point, Martin spoke with Degutis about trying to work on a part-time or flexible basis while caring for his granddaughter. Martin Dep. at 59, 77; Degutis Dep. at 71. Martin did not, however, submit a request for intermittent leave under the FMLA. Martin Dep. at 61. Degutis did not approve Martin's alternative work proposal. Martin Dep. at 60; Degutis Dep. at 71. Degutis acknowledged that other School Board employees had been permitted to work from home on occasion to accommodate special circumstances. Degutis Dep. at 73-74. Degutis testified that Martin's proposal was not workable because Martin would not be employed by the School Board after the end of his current contract due to failure to comply with the improvement plan. Degutis Dep. at 71.

On May 3, 2004, Degutis met with Martin and told him that taking FMLA leave would negate the agreement to give Martin thirty days to improve his job performance. Degutis Dep. at 64; Martin Dep. at 71 & ex. 4. He asked Martin to sign a document that reads as follows:

---

[6] Martin also wrote that he would take accrued vacation time and sick leave before his FLMA leave began. Martin Dep. 47 & ex. 2.

> I, <u>Anthony G. Martin, Payroll Supervisor</u> met with <u>Michael Degutis, Assistant Superintendent of Finance</u> on <u>Monday, May 3, 2004</u> and understand that taking Family and Medical Leave negates my agreement with the School Board of Brevard County, Florida. This agreement has allowed a thirty (30)-day time frame for improvement in my job performance. By not completing the conditions of the performance development assistance plan, I have waived my right to continued employment with the School Board of Brevard County, Florida. I understand that I will not be reappointed for employment for the 2004-2005 fiscal year. I further understand that my employment and benefits will end on June 30, 2004.

Martin Dep. ex. 4; Degutis Dep. at 65-67. Martin refused to sign the document. Degutis Dep. at 67-68.

Martin began his leave as scheduled, even though Brittany was not called to active duty. Martin Dep. at 58; Martin Aff. ¶ 4; Degutis Dep. at 68. He became, essentially, the stay-at-home mother of Hannah, bonding and caring for her in preparation for Brittany's absence, if it occurred. Martin Dep. at 82-85. Brittany continued to attend school and to perform her normal reserve training requirements periodically, as she had done before Martin requested FMLA leave. Martin Dep. at 57, 80-81; Martin Aff. ¶ 4. During the time he was on leave, Martin took care of Hannah when Brittany was in school, which was approximately four days per week for three or four hours per day and some evenings. Martin Aff. ¶ 4. He also took care of Hannah when Brittany performed periodic three-day Army Reserve drills. *Id.*

Apparently while Martin was on FMLA leave, Degutis wrote a memorandum to the human resources department recommending that Martin's contract not be renewed. Degutis Dep. at 54. Superintendent DiPatri, after consultation with Deputy Superintendent Berry and others, did not reappoint Martin to a new contract. DiPatri Dep. at 10-11.

On June 21, 2004, Martin received a letter from Degutis advising him that "since you did not complete your improvement plan as prescribed on April 19, 2004, the Superintendent did not recommend you for re-appointment for the fiscal year 2004-2005.  Therefore, your last day of employment with the School Board of Brevard County is Wednesday, June 30, 2004." Martin Dep. at 72 & ex. 4.

After his contract was not renewed by the School Board, Martin moved to North Carolina. Martin Dep. at 4.  Neither Brittany nor Hannah live with him in North Carolina.  *Id.* at 6.

## III.     STANDARD OF REVIEW.

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The United States Supreme Court explained this rules as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. . . . If material issues of fact exist, the Court must not decide them, but rather, must deny the motion and proceed to trial." *Kitchings v. Fl. United Methodist Children's Home, Inc.*, 393 F. Supp. 2d 1282, 1291 (M.D. Fla. 2005) (citing *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 255 (1986), and *Env't Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. July 13, 1981)).

**IV.    ANALYSIS.**

   *A.    The FMLA.*

"The FMLA provides that an 'eligible employee' is entitled to a maximum of twelve weeks of leave during which her employment status is protected." *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1352 (11th Cir. 2000) (citing 29 U.S.C. §§ 2611(2), 2612, 2614(a)(1)).  To qualify as an eligible employee, a person must have worked for the employer for a specified number of hours, and for at least twelve months.  29 U.S.C. § 2611(2).

An eligible employee is entitled to this leave for certain enumerated reasons, including "the birth of a son or daughter of the employee and in order to care for such son or daughter."  29 U.S.C. § 2612(a)(1)(A).  The FMLA defines "son or daughter" as "a biological, adopted, or foster child, a stepchild, a legal ward, or a child of a person standing in loco parentis . . . ."  29 U.S.C. § 2611(12). Department of Labor regulations define persons standing *in loco parentis* as "those with day-to-day responsibilities to care for and financially support a child . . . .  A biological or legal relationship is not necessary."  29 C.F.R. § 825.113(c)(3).

The entitlement to leave for the birth of a son or daughter expires twelve months after the child is born.  29 U.S.C. § 2612(a)(2).  Also, leave for the birth of a son or daughter "shall not be taken by an employee intermittently or on a reduced leave schedule unless the employee and the employer . . . agree otherwise."  *Id*. at (b).

When an eligible employee takes qualified FMLA leave, that employee is entitled, upon return from leave, to be restored to the position he held when the leave began, or to an equivalent position

with equivalent benefits, pay and terms and conditions of employment. 29 U.S.C. § 2614(1). However, "[a]n employee has no greater right to reinstatement . . . than if the employee had been continuously employed during the FMLA leave period. An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment." 29 C.F.R. § 825.216(a). Accordingly, "when an 'eligible employee' who was on FMLA leave alleges that her employer denied her FMLA right to reinstatement, the employer has an opportunity to demonstrate it would have discharged the employee even had she not been on FMLA leave." *O'Connor*, 200 F.3d at 1354.

  *B. Martin's Entitlement to FMLA Leave.*

"The FMLA recognizes two types of claims for alleged violations of [its] provisions: interference claims, in which employers burden or outright deny substantive statutory rights to which their employees are entitled, *see* 29 U.S.C. § 2615(a)(1)(1999), and retaliation claims, in which employers discharge employees for exercising their FMLA right to leave, *see id.* § 2615(a)(2)." *O'Connor*, 200 F.3d at 1353 (internal footnotes omitted). Martin states causes of action for both interference and retaliation.

As a threshold matter, Martin must present evidence that he was entitled to FMLA leave to support his claims of violation of his FMLA rights. *See Walker v. Elmore County Bd. of Educ*, 379 F.3d 1249 (11th Cir. 2004) (FMLA retaliation claim failed because plaintiff was not entitled to FMLA leave); *Morehardt v. Spirit Airlines, Inc.*, 174 F. Supp. 2d 1272, 1278 (M.D. Fla. 2001) (FMLA interference claim requires showing that plaintiff was entitled to FMLA leave). The School Board does not dispute that Martin met the hour and durational prerequisites to qualify as an eligible employee. Doc. No. 28 at 9. As such, the question is whether Martin was entitled to FMLA leave for

one of the reasons enumerated in the statute, specifically that he stood *in loco parentis* to his granddaughter, Hannah.

 1. *In Loco Parentis.*

To be entitled to FMLA leave under 29 U.S.C. § 2612(a)(1)(A), Martin must show that Hannah qualified as his "son or daughter." Under 29 U.S.C. § 2611(12), a "son or daughter" may include "a child of a person standing in loco parentis," which 29 C.F.R. § 825.113(c)(3) defines as a person "with day-to-day responsibilities to care for and financially support a child."

One of the few FMLA cases to consider the FMLA *in loco parentis* provision is *Dillon v. Maryland-National Capital Park and Planning Commission*, 382 F. Supp. 2d 777, 786–87 (D. Md. 2005). There, the court observed as follows:

> "The term 'in loco parentis,' according to its generally accepted common law meaning, refers to a person who has put himself in the situation of a lawful parent by assuming the obligations incident to the parental relation without going through the formalities necessary to legal adoption. It embodies the two ideas of assuming the parental status and discharging the parental duties." . . .
>
> "The key in determining whether the relationship of in loco parentis is established is found in the intention of the person allegedly in loco parentis to assume the status of a parent toward the child." The intent to assume such parental status can be inferred from the acts of the parties. "Other factors which are considered in determining whether in loco parentis status has been assumed are (1) the age of the child; (2) the degree to which the child is dependent on the person claiming to be standing in loco parentis; (3) the amount of support, if any, provided; and (4) the extent to which duties commonly associated with parenthood are exercised." . . .
>
>  . . . .
>
> The definitions of the term "in loco parentis" are often context specific, and no court—or regulation—has defined the term exhaustively. For some purposes, the presence of a biological parent in the home may foreclose another from holding the status of "in loco parentis." But for others . . . the presence of [a biological parent] in the home is not fatal . . . .

-11-

*Id.* (quoting *Niewiadomski v. United States*, 159 F.2d 683, 686 (6th Cir.1947), and 28 Am. Jur. 2d Proof of Facts 545, § 2). The *Dillon* court concluded that there was a genuine issue of material fact on the question whether an employee's grandmother stood *in loco parentis* to the employee, such that the employee qualified for FMLA leave to care for her grandmother. *Id.*

Courts that have considered the question of whether a person stood *in loco parentis* in other legal contexts similarly indicate that the decision turns on questions of fact. *See, e.g.*, *Powledge v. United* States, 88 F. Supp. 561 (N.D. Ga. 1950), *aff'd* 193 F.2d 438 (5th Cir. 1951) (determining who was entitled to receive deceased soldier's insurance benefits on behalf of minor child); *Nova University v. Wagner*, 491 So. 2d 1116, 1118 n. 2 (Fla. 1986) (wrongful death and personal injury claims against residential rehabilitation program where minors lived); *Gilbert v. Merritt*, 901 So. 2d 334, 335 n.1 (Fla. 4th Dist. Ct. App. 2005) (tort liability of grandparents for injury caused by child).

Here, there is no dispute that Brittany was not deployed oversees. There is also no dispute that Martin cared for Hannah only when Brittany was at school or away for weekend drills with the Army Reserve. There is also no dispute that Martin financially supported Brittany and Hannah both before and during the time Martin took FMLA leave. Martin's intention with respect to his relationship with Hannah during the period of his FMLA leave also raises credibility questions. Accordingly, whether these facts are sufficient to establish that Martin stood *in loco parentis* to Hannah in light of Brittany's continued presence in the home is a question most appropriately resolved by the trier of fact.[7]

---

[7] If the Court determines that a reasonable jury could not conclude, based on these facts, that Martin stood *in loco parentis* as to Hannah, then Martin would not have qualified for FMLA leave. Based on such a finding, I would recommend that the Court grant summary judgment in favor of the School Board on both the interference and retaliation claims.

      2.    <u>Estoppel</u>.

Martin argues that if the facts do not show that he stood *in loco parentis* as to Hannah, the School Board should, nevertheless, be estopped from relying on the argument that he was not eligible for FMLA leave based on Degutis's approval of the FMLA leave request. The Eleventh Circuit does not appear to have addressed the application of estoppel in the context of FMLA cases. *See Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 797 n.4 (11th Cir. 2000)(the court explicitly declined to address "the possibility of an employer being estopped from denying an employee's eligibility for FMLA leave if the employee reasonable relied to her detriment on the employer's failure to notify her promptly of her ineligibility" for FMLA leave); *see also Pennant v. Covergys Corp.*, 368 F. Supp. 2d 1307, 1313 (S.D. Fla. 2005) (declining to apply doctrine of equitable estoppel in FMLA case).

Even if the doctrine of equitable estoppel applied, however, Martin has not presented evidence sufficient to establish that it would be applicable in this case. The Eleventh Circuit has "recognized as elements of equitable estoppel under federal common law that: '(1) the party to be estopped misrepresented material facts; (2) the party to be estopped was aware of the true facts; (3) the party to be estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it; (4) the party asserting the estoppel did not know, nor should it have known, the true facts; and (5) the party asserting estoppel reasonably and detrimentally relied on the mirepresentation.'" *Caniero Da Cunha v. Standard First Ins. Co.*, 129 F.3d 581, 587 (11th Cir. 1997) (quoting *Nat'l Companies Health Benefit Plan v. St. Joseph's Hosp. of Atlanta, Inc.*, 929 F.2d 1558, 1572 (11th Cir. 1991)). In this case, in the event a jury determined that Martin did not stand *in loco parentis* as to Hannah, there is no showing that the School Board was aware that Martin did not qualify

for FMLA leave, or that it should have known that Martin's representation that he stood *in loco parentis* as to Hannah was untrue.

Furthermore, to the extent that Martin made misrepresentations to the School Board about his relationship to Hannah, he would precluded from relying on the equitable defense of estoppel because he would come before the Court with unclean hands. Accordingly, the doctrine of equitable estoppel does not preclude the School Board from asserting the defense that Martin was not eligible for FMLA leave.

### C. *Interference Claim*.

In order to prove a claim of interference, Martin must show that (1) he was entitled to a right protected under the FMLA, and (2) that he was denied that right. *Strickland*, 239 F.3d at 1208. Martin argues that his claim of interference arises both from the denial of his oral request to take intermittent leave and the School Board's decision not restore him to his job as payroll supervisor following the completion of his FMLA leave. Doc. No. 31 at 6-7.

FMLA regulations do not provide an unqualified right to intermittent leave based on the birth of a child. Rather, 29 U.S.C. § 2612(b) provides that leave for the birth of a child "shall not be taken by an employee intermittently or on a reduced leave schedule unless the employee and the employer . . . agree otherwise." The undisputed evidence establishes that Martin and the School Board did not agree to permit Martin to take intermittent or reduced leave. Accordingly, because Martin has not established that he had a legal right to take intermittent leave based on the birth of a child, his claim of interference with that purported right must fail.

The second basis for Martin's interference claim arises from the School Board's failure to restore him to his former position following his FMLA leave. This has been recognized as a sufficient basis to support an FMLA interference claim. *See Strickland*, 239 F.3d at 1208.

In this case, the undisputed evidence shows that the Martin's job as payroll supervisor ended on June 30, 2004, pursuant to his employment contract. The evidence is undisputed that the contractual term of employment was established before the issue of FMLA leave arose. Accordingly, the undisputed evidence establishes with respect to the interference claim that Martin's employment terminated based on the end of his contract, which would have occurred irrespective of his FMLA leave. Accordingly, summary judgment should be granted in favor of the School Board on Martin's interference claim because Martin had no right to continued employment after the end of his contractual term of employment. *See* 29 C.F.R. § 825.216(a).

*D.     Retaliation Claim.*

"To establish a prima facie case of retaliation, the plaintiff must show that: (1) he engaged in statutorily protected activity; (2) he experienced an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006). "If the plaintiff makes out a prima facie case, the burden then shifts to the defendant to articulate a legitimate reason for the adverse action. . . . If the defendant does so, the plaintiff must then show that the defendant's proffered reason for the adverse action is pretextual." *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).[8]

---

[8] Martin contends that there is direct evidence that he was not reappointed because he took FMLA leave. This point is disputed, with the School Board arguing that Martin was not reappointed because he did not achieve the objections of the Leadership Development Improvement Plan due to his absence on FMLA leave. The difference in the arguments is subtle,

In order to engage in statutorily protected activity, Martin must establish that he was entitled to take FMLA leave. *See Walker*, 379 F.3d at 1252-53. As discussed above, there is an issue of fact regarding whether Martin stood *in loco parentis* to Hannah, which is a necessary showing to establish that he was entitled to take FMLA leave.

With respect to the second element of the test, there is no dispute that Martin suffered an adverse employment action. In *Smith v. BellSouth Telecommunications, Inc.*, 273 F.3d 1303 (11th Cir. 2001), the Eleventh Circuit held that failure to rehire a plaintiff based on the plaintiff's use of FMLA leave while previously employed by the defendant is "the type of discrimination that the FMLA seeks to prohibit." *Id.* at 1313.

Material issues of fact preclude summary judgment based on the third factor of the retaliation claim. The facts in this case are similar to those presented in *Smith.* In that case, Plaintiff Smith applied for employment with Defendant BellSouth Telecommunications, Inc. (BellSouth), his previous employer. Evidence revealed that Smith had been flagged as not eligible to be rehired because he "[t]ook a lot of FMLA leave" while previously employed, and for other reasons. The court concluded that "[a] genuine issue of material fact remains: whether BellSouth refused to rehire Smith based on his past use of FMLA leave, or whether it based its decision on non-FMLA attendance problems and other factors." 173 F.3d at 1313. Accordingly, the Eleventh Circuit concluded that summary judgment was not appropriate. *Id*. at 1314.

Similarly, in the present case, the School Board has presented evidence that, if believed, establishes that it would not have reappointed Martin if he failed to achieve the objectives of the

---

but not insignificant. Under these circumstances, I conclude that the better analysis for purposes of the present motion is the *McDonnell-Douglas* burden shifting framework applied in *Hurlbert*.

Leadership Development Improvement Plan, irrespective of whether he took FMLA leave. Martin contends that this reason is pretextual, relying heavily on the May 3, 2004, memorandum and other evidence that the decision not to reappoint him was the result of his decision to take FMLA leave. Accordingly, as in *Smith*, summary judgment is not appropriate on the retaliation claim.

## V.     RECOMMENDATION.

For the reasons discussed in the foregoing report, I respectfully recommend that Defendant's Motion for Summary Judgment (Doc. No. 27) be **GRANTED** as to the interference claim in Count One of the Complaint and **DENIED** as to the retaliation claim in Count Two of the Complaint. Alternatively, if the Court concludes that no reasonable jury could find that Martin stood *in loco parentis* as to Hannah based on the facts before the Court, then I recommend that the Court grant the motion for summary judgment in its entirety.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on November 15, 2006.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy