# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ANTHONY G. MARTIN,**

**Plaintiff,**

-vs-                                          **Case No.  6:05-cv-971-Orl-22KRS**

**BREVARD COUNTY PUBLIC SCHOOLS,**
**an entity of the State of Florida,**

**Defendant.**
_____

## ORDER

### I.  INTRODUCTION

This cause comes before the Court for consideration of the Defendant's, Brevard County Public Schools, Motion for Summary Judgment (Doc. 27), filed June 30, 2006, and Memorandum in support thereof (Doc. 28), filed July 5, 2006, to which Plaintiff, Anthony G. Martin, responded (Doc. 31) on August 1, 2006.  On November 15, 2006, the United States magistrate judge assigned to the case issued a Report and Recommendation on the motion (Doc. 35).  In her memorandum opinion, the magistrate judge recommended that Defendant's Motion for Summary Judgment be granted as to the interference claim in Count One of the Complaint (Doc. 3).  As to Count Two of the Complaint, the magistrate judge recommended that the Motion For Summary Judgment be denied or, in the alternative, should this Court determine that no reasonable jury could determine that Plaintiff stood *in loco parentis* as to his granddaughter based on the facts before this Court, the magistrate judge recommended that the Court grant Defendant's motion in its entirety.  Doc. 35 at 17.

On December 4, 2006,  Plaintiff filed Objections (Doc. 42) to the magistrate judge's Report and Recommendation, to which Defendant responded (Doc. 45) on December 18, 2006. Defendant also filed Objections (Dec. 43) on December 4, 2006 to which Plaintiff responded (Doc. 44) on December 18, 2006.  Having reviewed the Report and Recommendation (Doc. 35), Plaintiff's Objections (Doc. 42), Defendant's Objections (Doc.43), and the responsive memorandum thereto (Docs. 44 & 45), this Court makes the following conclusions.

## II.  BACKGROUND

The instant action arises out of a dispute between Plaintiff Anthony G. Martin and Defendant Brevard County Public Schools.  The controversy boils down to two issues.  The first is whether the Defendant interfered with Plaintiff's right to take leave pursuant to the Family and Medical Leave Act (FMLA), 29 U.S.C. § 260, *et seq.* Doc. 3 at 4.  The second issue regards whether Defendant retaliated against Plaintiff for taking FMLA leave.  *Id.* at 5-6.

As a preliminary matter, it is undisputed that Defendant is an employer within the scope of the FMLA.  Doc. 3 ¶ 7; Doc. 4 ¶ 7.

In January 2000, Defendant hired Plaintiff as the payroll supervisor.  Martin Dep. at 7 (Doc. 29-3).[1]  His responsibilities included processing payroll in the computer system, answering payroll queries, and supervising eight payroll clerks.  *Id.*  Plaintiff worked for

---

[1]  The deposition of Plaintiff, as with most of the witnesses, is broken up in three different attachments to Document 29.  The Court will refer to depositions by their internal page numbers.

Defendant on a contractual basis.  Each contract was for the term of one year.  Plaintiff's

last contract with Defendant expired on June 30, 2004.  Degutis Dep. at 51.[2]

During his tenure with Defendant, Plaintiff lived with his wife and two daughters,

Brenna and Brittany, and Brittany's daughter, Hannah, who was born in November 2003.

Martin Dep. at 5-6, 49.  Brittany was a student in addition to serving in the Army Reserves.

Since Brittany was a single mother to Hannah Plaintiff provided both a home,

transportation, food, money for expenses, in addition to health insurance.  Martin Aff. ¶ 3

(Doc. 29-2).

Michael Degutis, Assistant Superintendent of Finance for Defendant and Plaintiff's

immediate supervisor, described Plaintiff's job performance as "erratic."  Degutis Dep. at 4-

6; Martin Dep. at 46.  Expounding on that statement, Degutis stated:

> [Plaintiff] would perform well at certain points, and then not perform well on
> other points.  And the negative performance, or the poor performance would
> be such things as – he's not being a team player, being a poor supervisor, not
> working well with people in his – under his charge and other departments,
> and things like that.

Degutis Dep. at 6.  Plaintiff's performance appraisal for the 2002-2003 school year showed

that he performed at the highest level, "performing at a professional level."  Degutis Dep. at

81.  Richard A. DiPatri, Ed.D., Superintendent of the School Board, wrote a letter of

recommendation on May 10, 2002 for Plaintiff.  DiPatri Dep. at 8-9 (Doc. 27-2 at 50-51).

At that point,  DiPatri thought Plaintiff was doing a good job.  *Id.* at 8.  However, both

---

[2]  The Degutis deposition may be found in Document 29 exhibits 7 through 9.

DiPatri and Degutis stated that Plaintiff's work declined in subsequent years. *See id.* at 9-11; Degutis Dep. at 81.

At some point during his employment with Defendant, Plaintiff filed a formal grievance with Joy Salamone, who worked in Defendant's human resources department, complaining that Degutis was treating Plaintiff different from the other managers. Salamone investigated the matter and found no disparate treatment of Plaintiff.

Degutis, who was responsible for evaluating the employees he supervised, prepared an interim performance evaluation for Plaintiff in April 2004. Degutis Dep. at 48. In the report, Degutis stated that Plaintiff's performance was "performing at a professional level," the highest level, in three areas, "needs improvement in professional performance," in five areas, and "unsatisfactory level of performance" in two areas. *Id.* at 49. Degutis then gave Plaintiff a Leadership Development Improvement Plan. *Id.* at 48. Pursuant to the plan, Plaintiff had thirty days, through June 1, 2004, "to demonstrate significant progress as outlined in the improvement plan." Performance Evaluation at 5 (Doc. 29-6 at 5). Degutis presented the report to Plaintiff on April 19, 2004.

In the same month, the Army Reserves informed Plaintiff's daughter, Brittany, that her unit was being called up for active duty. Martin Dep. at 49-50. On April 29, 2004, Plaintiff informed his staff that he would be taking a leave of absence to care for his granddaughter for twelve weeks, starting May 7, 2004. *Id.* at 52.

Plaintiff gave Defendant a Leave of Absence Request dated April 29, 2004, for FMLA leave from May 7, 2004 through June 30, 2004. Doc.29-10 at 11. Degutis signed off and approved Plaintiff's request for leave. Plaintiff relied on Degutis's "approval as

-4-

proof that [he] was FMLA eligible and that [his] reasons were FMLA-qualifying." Martin Aff. ¶ 7. Plaintiff states that he would not have taken leave if the FMLA leave had not been approved. *Id.* ¶ 8.

On April 29, 2004, Plaintiff gave Degutis an additional memorandum stating that he would be taking leave starting on May 7, 2004 to care for his granddaughter. Plaintiff's memorandum states: "Due to unforeseeable events, I have day-to-day responsibility for caring for my granddaughter and stand '*in loco parentis.*' These responsibilities include caring for and financially supporting her. She is less than 12-months old . . . Her birth date was November 24, 2003." Doc. 29-6 at 6. Plaintiff hand-delivered this memorandum to Degutis. Martin Dep. at 59-60.

After Plaintiff gave Degutis his memorandum, Degutis consulted with several of Defendant's employees Joy Salamone, Bonnie Mozingo, director of compensation and benefits, and Mr. Berry, the deputy superintendent. Degutis Dep. at 60-61. All three of these individuals told Degutis that if taking FMLA leave prevented Plaintiff from fulfilling his improvement plan then Plaintiff's contract would not be renewed. *Id.* at 60-63. Degutis was directed to inform Plaintiff, in writing, that should Plaintiff take FMLA leave his contract would not be renewed with Defendant. *Id.* at 64.

On May 3, 2004, Degutis met with Plaintiff to inform him that Plaintiff's FMLA leave would negate the agreement to give Plaintiff a thirty day grace period to improve his performance on the job. *Id.* at 64. Degutis asked Plaintiff to sign a statement to this effect. Plaintiff refused. *Id.* at 67-68.

Plaintiff spoke with Degutis about trying to work on a part-time or flex-time basis while he was caring for his granddaughter. *Id.* at 70-71. Plaintiff never reduced this proposal to writing and officially requested intermittent leave under the FMLA. Martin Dep. at 61. Degutis declined Plaintiff's verbal proposal to work part time. Degutis Dep. at 71. Degutis admitted that other employees had worked from home to accommodate certain circumstances. *Id.* at 73-74. Degutis stated that a flex-time or part-time schedule would not have worked in Plaintiff's situation because he would not be employed at the end of his contract due to his failure to fulfill his improvement plan. *Id* at 71.

Plaintiff took his leave as scheduled, however, Brittany was never called to active service. Martin at 57-58. He was, in essence, a stay-at-home parent for Hannah, bonding and caring for her to prepare them both for Brittany's absence, if it occurred. *Id.* at 82-85. Brittany did not deviate from the schedule she maintained before Plaintiff went on leave. *Id.* at 57, 80-81; Martin Aff. ¶ 4. Plaintiff additionally took care of Hannah while Brittany was at her three day Army Reserve drills. Martin Aff. ¶ 4.

Degutis authored a memorandum to Defendant's human resources department recommending the nonrenewal of Plaintiff's employment contract. Degutis Dep. at 54. Superintendent DiPatri, after consulting with Deputy Superintendent Berry and others, did not reappoint Martin to a new contract. DiPatri Dep. at 10-11.

On June 21, 2004, Plaintiff received a letter from Degutis informing him that he was not going to be reappointed because he did not fulfill his improvement plan. Martin Dep. at 72.

Plaintiff moved to North Carolina after his contract was not renewed.  *Id.* at 4.

Brittany and Hannah do not live with him in North Carolina.  *Id.* at 6.

### III.  ASSIGNMENTS OF ERROR

**A.  Plaintiff's Objections**

In his Objections to Statement of the Facts, Plaintiff assigns multiple points of error.

First, Plaintiff objects to the magistrate's statement that Plaintiff "provided Brittany and

Hannah with a home, car, food, and expense money, as well as health care." Doc. 35 at 3.

Plaintiff argues that this statement minimizes Plaintiff's *in loco parentis* relationship with

Hannah.  Plaintiff desires language that better describes how he played an integral role in

Hannah's life.  Plaintiff does not add to the list the magistrate judge created.  Plaintiff claims

that the record indicates that before Plaintiff went on leave he did not have time to pick

Hannah up, change her diaper, or play with her because he was busy fulfilling his role as the

primary bread winner.

Second, Plaintiff objects to the statement that his job performance was erratic.  Doc.

35 at 4.  Plaintiff contends that he received excellent yearly performance appraisals every

year that he worked for Defendant.  Doc. 42 at 3 citing Ex.6. of Defendant's S.J. motion.

Third, Plaintiff objects to the date of an email he sent.  Page five of the report and

recommendation states that on April 19, 2004 Plaintiff sent an e-mail regarding his FMLA

leave.  *Id.* at 5.  Plaintiff argues that the email is dated April 29, 2004.

Fourth, Plaintiff objects to the use of the phrase "Plaintiff's contract would not be

renewed" because it give the false impression of an adverse action less than termination.

Plaintiff argues that Defendant stipulated that non-renewal of his contract was the equivalent of firing Plaintiff.  Degutis Dep. at 62.

Fifth, Plaintiff objects to the statement that after taking the FMLA leave, Plaintiff "became, essentially, the stay-at-home mother of Hannah, bonding and caring for her in preparation for Brittany's absence."  Doc. 35 at 7.   Plaintiff argues that this statement minimizes his efforts to bond with Hannah before he went on leave.  Additionally, he contends that it pays no heed to his role as Hannah's provider and breadwinner since she was born.

Sixth, Plaintiff objects to page eight of the report where it states that "[a]fter his contract was not renewed by the School Board, Martin moved to North Carolina.  Martin Dep. at 4.  Neither Brittany nor Hannah live with him in North Carolina.  *Id.* at 6."  Plaintiff argues that these statements create a false impression that Plaintiff abandoned Brittany and Hannah with no intention to continue his role of provider and breadwinner.  Plaintiff contends that he lived in Cocoa until late August 2004, two months after he was terminated. He further argues that he had no choice but to move to North Carolina because he had no income or place to live in Florida.

Plaintiff also makes several objections to the magistrate judge's findings of law.  In Plaintiff's seventh objection, he argues that the magistrate judge improperly limited the scope of his interference claim to only Defendant's refusal to grant Plaintiff intermittent leave.  Plaintiff argues that his interference claim also extends to Defendant's action of threatening Plaintiff's termination if he took approved FMLA leave.  Plaintiff contends that Defendant denied Plaintiff's exercise of FMLA rights on June 21, 2004, when Degutis gave

Plaintiff a memorandum stating that Defendant was firing Plaintiff for taking FMLA leave. Plaintiff further argues that the interference claim encompasses Defendant's action of refusing to grant Plaintiff continuous FMLA leave beyond June 30, 2004.  Plaintiff claims that Defendant retaliated against Plaintiff by refusing to reinstate him.

Eighth, Plaintiff objects to the report to the extent that it fails to recognize that the FMLA is a strict liability statute and that intent to violate the FMLA is not an element of claims for interference with, restraint of, and denial of FMLA rights.

Ninth, Plaintiff objects to the magistrate judge's apparent indication that there is insufficient evidence of Plaintiff's *in loco parentis* status due to Brittany's "continued presence in the home."  Doc. 35 at 12.  Plaintiff claims that his *in loco parentis* status is a question of fact for the jury.

Tenth, Plaintiff contends that the magistrate judge erred in stating that the doctrine of equitable estoppel does not apply to this case.  Plaintiff argues that the cases that the magistrate judge relied on for this proposition, *Caniero Da Cunha v. Standard First Insurance Company*., 129 F.3d 581, 587 (11th cir 1997) and *National Companies Health Benefit Plan v. St. Joseph's Hosp. of Atlanta, Inc.*, 929 F.2d 1558, 1572 (11th Cir. 1991),  did not involve a FMLA claim.  Plaintiff argues that *Caniero* did not discuss equitable estoppel's application to FMLA claims.

Regarding the *Nat'l Cos.*, Plaintiff argues that it applied equitable estoppel to an ERISA claim.  Plaintiff contends that he satisfies the test laid out for equitable estoppel in *Nat'l Cos.*  Plaintiff claims that the magistrate judge improperly focused solely on the second equitable estoppel element, whether or not the party to be estopped was aware of the

true facts, in the conclusion to deny equitable estoppel.  Doc. 35 at 13-14.  Plaintiff argues the magistrate judge erred in concluding Plaintiff did not meet this element.

Plaintiff contends the magistrate judge misapplied *Nat'l Cos.* in that Defendant as an employer should be charged with knowledge of every provision of the FMLA.  Plaintiff argues an employer is obligated to ascertain whether an employee's basis for requesting leave is true or untrue.  Plaintiff quotes the statute "'in all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying and to give notice of the designation to the employee as provided in this section.'"  Doc. 42 at 8 (quoting 29 C.F.R. § 825.208(a)).

Eleventh, Plaintiff argues that it was Defendant's responsibility to determine whether or not Plaintiff had *in loco parentis* status to Hannah.  Plaintiff asserts that Defendant did nothing to ascertain whether Plaintiff had this status or not.  Plaintiff claims that the Report and Recommendation rewards Defendant's inaction even though Defendant had opportunities and means to make the inquiries in this case.  Plaintiff contends that the magistrate judge invaded the province of the jury by making a finding of credibility about Plaintiff's representations that he had *in loco parentis* status.

Twelfth, Plaintiff objects to the magistrate judge's representation of the basis of Plaintiff's interference claim being his verbal request for intermittent leave and Defendant's decision not to renew his contract.  Plaintiff refers back to his seventh objection as to the proper scope and basis of his interference claim.

Thirteenth, Plaintiff objects to the magistrate judge's determination that Plaintiff's employment with Defendant ended on June 30, 2004 because that was the date his

employment contract expired.  Plaintiff contends that his employment ended that date because he elected to take FMLA leave.

Fourteenth, Plaintiff objects to the absence of provision 29 C.F.R. § 825.215(b) in the Report and Recommendation.  The pertinent part of the provision states "if an employee is no longer qualified for the position because of the employee's inability to attend a necessary course . . . as a result of leave, the employee shall be given a reasonable opportunity to fulfill those conditions upon return to work."  Plaintiff argues that Defendant violated this provision by not allowing Plaintiff to fulfill the Leadership Development Improvement Plan.  Plaintiff contends that Defendant did not renew his contract expressly because he took FMLA leave.

Fifteenth, Plaintiff objects to the magistrate judge's determination that Plaintiff's retaliation claim should be examined within the construct of *McDonnell Douglas* circumstantial evidence, burden-shifting analysis.  Plaintiff asserts that the instant case involves direct evidence of interference of FMLA rights and retaliation.  Plaintiff argues that since it is direct evidence at issue then the examination should employ a strict liability analysis, which places the burden on Defendant to demonstrate that it would have terminated Plaintiff even had he not taken the approved leave.

Sixteenth, Plaintiff asserts that the only questions at issue, under Count I of the Complaint, are (1) did Plaintiff's relationship with Hannah constitute *in loco parentis* status; (2) was Hannah under the age of one year old when Plaintiff took FMLA leave; (3) did Plaintiff take FMLA leave to care for Hannah; and (4) did Defendant interfere with, restrain,

or prohibit Plaintiff from exercising his FMLA rights.  Plaintiff suggests the answer to all of these questions is an 'emphatic' yes.  Doc. 42 at 12.

Seventeenth, under Count II of the Complaint, Plaintiff argues that should this Court adopt the magistrate's conclusion not to apply strict liability then the burden should still be on Defendant to prove that it would have fired Plaintiff even if he had not exercised his FMLA rights.  Plaintiff contends that the magistrate judge's statement "[School Board] told Degutis that if Martin could not fulfill his improvement plan due to taking FMLA leave that his contract would not be renewed.  Deguits p.60-63," is direct evidence of liability.

Eighteenth, Plaintiff objects to the magistrate judge's burden shifting analysis where she stated Defendant presented evidence that established it would not have reappointed Plaintiff if he did not meet the objectives of the improvement plan.  Plaintiff contends that the report does not cite to any evidence for this point because no evidence existed.

**B. Defendant's Objections**

Defendant objects to the magistrate judge's recommendation that Defendant's Motion for Summary Judgment be denied.  Specifically, Defendant claims that the record was clear in that Plaintiff did not meet the terms of his improvement plan.  Defendant argues that FMLA does not protect Plaintiff from being terminated for poor performance.

Second, Defendant objects to the magistrate judge's finding that equitable estoppel applies to FMLA cases in the Eleventh Circuit.  Defendant cites several district court cases for the proposition that estoppel does not apply in FMLA cases in this Circuit.  Defendant argues Plaintiff fails to meet the first element of a prima facie case in that Plaintiff was not entitled to leave.

-12-

## IV.  STANDARD OF REVIEW

When a magistrate judge issues a report and recommendation, the district judge must make a *de novo* determination of the findings and/or recommendations to which any party objects.  *See* 28 U.S.C. § 636(b)(1)(C) (2003). "This requires that the district judge 'give fresh consideration to those issues to which a specific objection has been made by a party.'" *Lacy v. Apfel*, 2000 U.S. Dist. Lexis 21437, *2-3 (M.D. Fla. Oct. 20, 2000) (quoting *Jeffrey S. v. State Bd. of Educ.*, 896 F. 2d 507, 512 (11th Cir. 1990)). "In the absence of specific objections, there is no requirement that a district judge review factual findings *de novo*." *Id.* at 3 (emphasis added) (internal citation omitted). However, regardless of whether objections are filed, a district judge must review a magistrate's legal conclusions *de novo*.  *See id.* After reviewing a report and recommendation, objections, and responses thereto, the district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. *See* § 636(b)(1)(C).

## V.  ANALYSIS

At the outset, the Court notes Plaintiff's general objection to the magistrate judge's finding of facts, does not compel *de novo* review of her entire findings of facts; instead, this Court will review the findings of fact to which Plaintiff specifically objected.  *Lacy*, 2000 U.S. Dist. Lexis 21437, at 3.

### A.  Plaintiff's Objections to the Findings of Fact

The Court overrules Plaintiff's first objection to the findings of fact.  Plaintiff does not contend that the finding was erroneous, just that it minimized Plaintiff's involvement in Hannah's life.  The statement reflects, in a succinct manner, the extent of Plaintiff's

involvement in Hannah's life.  The Court finds that this statement is not only true but an accurate reflection of Plaintiff's relationship with Hannah.

Similarly, the Court overrules Plaintiff's second objection.  The magistrate judge found that Plaintiff's performance was erratic.  This finding is consistent with the record. Degutis Dep. at 5.  Plaintiff's contention that he received excellent reviews on his performance ratings over the previous years does not directly contradict the finding of erratic.  The magistrate judge did not find that Plaintiff had all poor reviews, but that his performance was not consistent.

Regarding Plaintiff's third objection, the Court sustains it.  The record does indicate that the email he sent to his staff was on April 29, 2006.  Ex. 3 to Martin dep. (Doc. 29-6 at 7).

The Court overrules Plaintiff's fourth objection.  The record clearly indicates that "non-renewal of Plaintiff's contract" means that Defendant was terminating his employment and the parties clearly agreed that this phrase signified that Plaintiff would no longer be working for Defendant.  Degutis Dep. at 62.

Plaintiff's fifth objection is frivolous.  He does not contend that the magistrate judge erred in stating Plaintiff's actual relationship with Hannah; instead, Plaintiff argues that the statement minimizes Plaintiff's attempts to bond with his granddaughter before he took FMLA leave.

The same analysis applies to Plaintiff's sixth objection.  He did move to North Carolina and Brittany and Hannah did not.  Martin Dep. at 4, 6.  Plaintiff objects because he

feels that the statement creates a false impression that he abandoned Brittany and Hannah. Plaintiff does not object to the veracity of the statement; thus, his objection is overruled.

With the exception of the objection to the date of Plaintiff's email, this Court adopts all of the magistrate's findings of fact.

## B.  Preliminary Considerations

### 1.  Plaintiff's Entitlement to FMLA

As a threshold issue, Plaintiff must be an eligible employee to be protected through the FMLA for a maximum leave of twelve weeks in a twelve month period.  29 U.S.C. § 2612.  An eligible employee is one who has worked for his employer for both a specified number of hours and for at least twelve months.  *Id.* § 2611(2)(A).

There are several enumerated reasons for which an employee is eligible to take leave, one of which is the "birth of a son or daughter of the employee and in order to care for such son or daughter."  *Id.* § 2612(a)(1)(A).  A son or daughter "means a biological, adopted, or foster child, a stepchild, a legal ward, or a child of a person standing in loco parentis."  *Id.* § 2611(12).  As the magistrate judge notes the Department of Labor states a person standing *in loco parentis* means that the person is charged "'with day-to-day responsibilities to care for and financially support a child . . . . A biological or legal relationship is not necessary.'"  Doc. 35 at 9 (citing 29 C.F.R. § 825.113(c)(3)).

The window for using this leave for the birth of a son or child closes twelve months after the child is born.  29 U.S.C. § 2612(a)(2).  Additionally, an employee shall not take intermittent leave for the birth of a child unless the employee and employer reach an agreement on the issue.  *Id.* § 2612(b).

Before determining whether there has been a substantive violation, the Court must first determine whether Plaintiff is an eligible employee pursuant to the statute. If Plaintiff is not an eligible employee then claims fail and he does not have protection pursuant to the FMLA. *See Walker v. Elmore County Bd. of Educ.*, 379 F.3d 1249, 1253 (11th Cir. 2004). It is not disputed that Plaintiff met the hour and tenure requirements of the eligibility statute. Doc. 28 at 9. The issue distills down to whether Plaintiff qualified as an eligible employee, specifically whether he stood *in loco parentis* to Hannah.

To determine whether Plaintiff stood *in loco parentis* the Court must look to see if Plaintiff had "day-to-day responsibilities to care for and financially support" Hannah. 29 C.F.R. § 825.113(c)(3). Exploring *in loco parentis* status, the magistrate judge relied on a similar case in Maryland, where the district court determined:

> The term 'in loco parentis,' according to its generally accepted common law meaning, refers to a person who has put himself in the situation of a lawful parent by assuming the obligations incident to the parental relation without going through the formalities necessary to legal adoption. It embodies the two ideas of assuming the parental status and discharging the parental duties . . . . The key in determining whether the relationship of in loco parentis is established is found in the intention of the person allegedly in loco parentis to assume the status of a parent toward the child. The intent to assume such parental status can be inferred from the acts of the parties. Other factors which are considered in determining whether in loco parentis status has been assumed are (1) the age of the child; (2) the degree to which the child is dependent on the person claiming to be standing in loco parentis; (3) the amount of support, if any, provided; and (4) the extent to which duties commonly associated with parenthood are exercised . . . .
>
> The definitions of the term "in loco parentis" are often context specific, and no court- or regulation- has defined the term exhaustively. For some purposes, the presence of a biological parent in the home may foreclose another from holding the status of "in loco parentis." But for others . . . the presence of [a biological parent] in the home is not fatal to Plaintiff's claim.

Doc. 35 at 11 (citing *Dillon v. Maryland-National Capital Park and Planning Com'n*, 382 F.Supp.2d 777, 786-87 (D.Md. 2005)) (internal citations omitted).  The *Dillon* court determined that there remained a question of fact as to whether the employee stood *in loco parentis* to his grandmother.  *Id.* at 787.

In the instant case, Plaintiff took FMLA leave because his daughter was going to be deployed overseas and, as a result, he would have had to take care of Hannah.  However, Brittany was never deployed.  Plaintiff cared for Hannah only when Brittany was at school or away on weekend training for the Army; both routine activities she did before she received notice that she was supposed to be deployed.  Plaintiff financially supported both Brittany and her daughter before and during the period Plaintiff took FMLA leave.  The magistrate judge concluded that this question was probably best determined by a trier of fact.  But, in the alternative, the magistrate judge concluded that if this Court found that no reasonably jury could conclude that Plaintiff stood *in loco parentis* with Hannah then this Court should grant summary judgment for Defendant.  Doc. 35 at 17.

This Court determines the magistrate judge's alternative conclusion is correct in the instant case and grants summary judgment for Defendant because no reasonable jury could find that Plaintiff stood *in loco parentis* in this situation.  Plaintiff claims he had to leave in order to care for Hannah.  However, even though Brittany was officially called to active duty, the actual household dynamic did not change.  Brittany maintained the same schedule she had before Plaintiff went on leave.  Brittany, Hannah's parent in fact, had the capability to fulfill the same role that she did before Plaintiff went on leave.  The simple fact is that nothing changed in Plaintiff's day-to-day life.  The Court agrees with the magistrate's

alternative recommendation in that this Courts finds Plaintiff did not stand *in loco parentis* to Hannah and therefore summary judgment is appropriate in the instant case.

### 2. Estoppel

Plaintiff argues that, to the extent that the evidence demonstrates that he did not stand *in loco parentis* to Hannah, Defendant should be estopped from arguing this point because Degutis approved Plaintiff's FMLA leave request.  As the magistrate judge noted, the Eleventh Circuit has yet to address the application of estoppel in FMLA cases.  *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 797 n.4 (11th Cir. 2000)(declining to opine on whether or not an employer could be estopped from denying an employee's eligibility for FMLA leave where the employee reasonably relied, to her detriment, on the employer's failure to immediately notify her of her ineligibility).  Until the Eleventh Circuit mandates differently, this Court finds no reason to apply the estoppel doctrine to the FMLA. *Pennant v. Covergys Corp.*, 368 F.Supp. 2d 1307, 1313 (S.D. Fla. 2005).  Therefore, the Court adopts the magistrate's recommendation that equitable estoppel does not apply in the instant case.

## C.  Substantive Rights Under FMLA

The Court has already concluded that Plaintiff did not meet the threshold requirement of being an eligible employee.  However in an abundance of caution, the Court goes a step further and analyzes Plaintiff's substantive claims.

The FMLA guarantees the eligible employee that, upon return from a qualified FMLA leave, that employee is entitled to be restored to the same or an equivalent position that the employee held before the employee took the leave. *Id.* § 2614(a)(1).  Yet the rights

granted by the FMLA are no greater than the rights to which the employee would have been entitled had he not taken the leave:

> An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period. An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment.

29 C.F.R. § 825.216.  Therefore, "when an eligible employee who was on FMLA leave alleges her employer denied her FMLA right reinstatement, the employer has an opportunity to demonstrate it would have discharged the employee even had she not been on FMLA leave."  *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1354 (11th Cir. 2000).

The FMLA states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."  The Eleventh Circuit recognizes two types of claims pursuant to FMLA: an interference claim and a retaliation claim.  *Water Works & Sewer Board of the City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001).  Plaintiff argues the Court should also recognize claims for denial and restraint of FMLA rights.  These claims are incorporated in the two claims recognized by the Eleventh Circuit.

### 1. Interference Claim

An interference claim entails an employee accusing his employer of denying him his substantive rights pursuant to FMLA.  *Id.*  An interference claim has two simple factors: (1) was the employee entitled to a substantive right and (2) did the employer interfere with the employee's right.

Plaintiff argues that the Defendant interfered with his rights when Degutis denied his oral request for intermittent leave and refused to reinstate him to his position as a payroll supervisor.  In his Objections, Plaintiff also argues that the magistrate judge did not consider other alleged violations of his rights namely, "on May 3, 2004, when Mr. Degutis handed Plaintiff a memorandum threatening termination if he took approved FMLA leave. . . . on June 21, 2004, when Mr. Degutis handed Plaintiff a memorandum telling him he was being fired for taking FMLA leave . . . when [Defendant] refused to deny or approve FMLA leave beyond June 30, 2004."  Doc. 42 at 6.

As previously stated, an employee does not have an automatic right to take intermittent leave for the birth of a child unless the employer and employee agree otherwise. 29 U.S.C. § 2612(b).  The parties did not reach an agreement for Plaintiff to take an intermittent leave.  Therefore, Plaintiff failed to establish a right to which he was entitled and his claim on this alleged violation fails.

Plaintiff's contention that his FMLA rights were violated because Defendant did not restore him to his position after his leave is meritless.  Plaintiff worked for Defendant on a contractual basis, the term of which spanned a year.  The contractual nature of Plaintiff's employment was established prior to and independent of Plaintiff's FMLA leave request. Thus, Plaintiff's employment with Defendant ended because his contract ran its course and was not renewed.  The termination of Plaintiff's contract, which would have expired whether or not Plaintiff took the leave, also marked the end of Plaintiff's rights pursuant to FMLA.

Moreover, Plaintiff's objection to the magistrate judge not considering all the alleged violations of the FMLA is a frivolous attempt to misconstrue the evidence. Degutis never told Plaintiff that he would be terminated for taking FMLA leave. Degutis told him that his contract would not be renewed if Plaintiff did not meet his obligations pursuant to the improvement plan. The FMLA is not a shield to hide behind for an employee who would have already been subject to an adverse employment action. *See O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1354 (11th Cir. 2000). Plaintiff failed to demonstrate how he met his burden of fulfilling the improvement plan, which was a prerequisite to Defendant renewing Plaintiff's contract. Therefore, this Court adopts the magistrate's finding regarding Plaintiff's interference claim.

**2. Retaliation Claim**

Plaintiff contends the magistrate judge erred by stating that intent to violate FMLA is an element of a retaliation claim and by not analyzing the claim under the standard of strict liability. Plaintiff cites a long string of authorities for this proposition, none of which is from the Eleventh Circuit. This Court follows the precedent set by the Eleventh Circuit, which requires a plaintiff to show direct evidence of the employer's retaliatory intent. *Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006). Plaintiff argues he has demonstrated direct evidence of Defendant's intent in a statement by Degutis where it concluded that by taking FMLA leave Plaintiff would not be able to fulfill his improvement plan. This statement is not direct evidence of Defendant's alleged

retaliatory intent because "[a]n employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period." *O'Connor*, 200 F.3d at 1354.

Plaintiff was on a probationary period at the time he applied for leave.  The onus was on Plaintiff to demonstrate why Defendant should reinstate him.  Had he not demonstrated an improvement, Defendant would not have renewed his contract.  Therefore, Defendant's action of not renewing Plaintiff's contract does not demonstrate a retaliatory intent on Defendant's part; instead, it shows what had already been set in motion by Plaintiff's inadequate performance of his job prior to his request of FMLA leave.  Defendant gave Plaintiff an opportunity to improve his performance and therefore a reason for Defendant to renew his contract through its improvement plan.  But Plaintiff declined to do so.  By Plaintiff not fulfilling the improvement plan Defendant carried out a decision not to renew him that was made before Plaintiff applied for FMLA leave.

With no direct evidence of Defendant's intent to retaliate, Plaintiff's claim is subject to the *McDonnell Douglas* burden shifting analysis.  *Hulbert*, 439 F.3d at 1297.  To establish a prima facie retaliation claim under the FMLA statute Plaintiff must show:

> (1) he engaged in statutorily protected activity; (2) he experienced an adverse employment action; and (3) there is a casual connection between the protected activity and the adverse action.  If the plaintiff makes out a prima facie case, the burden then shifts to the defendant to articulate a legitimate reason for the adverse action.  If the defendant does so, then plaintiff must then show that the defendant's proffered reason for the adverse action is pretextual.

*Id.*

For the purposes of analysis, the Court will assume that Plaintiff did stand *in loco parentis* to Hannah. As to the second element, it is clear that Plaintiff experienced an adverse employment action in that his contract was not renewed after he took FMLA leave. Plaintiff argues that he meets the third element because Defendant did not renew his contract due to him taking FMLA leave.

Even if the Court accepted Plaintiff's causal argument thus completing a prima facie case, Defendant persuasively contends that Plaintiff failed to complete the improvement plan irrespective of whether he took FMLA leave. As previously discussed herein, Plaintiff had an obligation to demonstrate why he should have been reinstated at the end of his contract period. Defendant gave him an opportunity to do this through a thirty day probationary period. Plaintiff did not meet his obligation. Plaintiff's failure to show improvement led to Defendant's decision not to reinstate him. This decision was not pretextual because the mechanism of the decision was set into motion before Plaintiff requested FMLA leave. Plaintiff cannot avoid his obligations by taking FMLA leave. Therefore, this Court finds that summary judgment is appropriate on this claim.

### 3. Plaintiff's Qualification Objection

Plaintiff objected to the magistrate judge not citing 29 C.F.R § 825.215(b) which states, "if an employee is no longer qualified for the position because of the employee's inability to attend a necessary course, renew a license, fly a minimum number of hours, etc., as a result of leave, the employee shall be given a reasonable opportunity to fulfill those conditions upon return to work." The reason the magistrate judge did not refer to this section is because it is totally irrelevant to the analysis of the instant case. The issue is not

whether or not Plaintiff was qualified for the job but whether or not he was performing the job adequately.  Defendant found that he clearly was not and gave him an opportunity to improve his performance before his contract ended.  Plaintiff failed to show that he had improved before the contract expired and therefore his contract was not renewed.

### VI.  CONCLUSION

Plaintiff has failed to demonstrate that he was an eligible employee pursuant to FMLA.  Additionally, both his claims of interference and retaliation are insufficient to give rise to a genuine issue of material fact.  Therefore, this Court **adopts** the magistrate's recommendation to the extent that she concludes summary judgment is appropriate and respectfully **declines to adopt** her recommendations to the extent that the magistrate judge finds a genuine issue of material fact.

Based on the foregoing, it is **ORDERED** as follows:

1.      The Court **ADOPTS IN PART** and **DECLINES TO ADOPT IN PART** the magistrate judge's report and recommendation (Doc. 35) filed November 11, 2006.

a.  The Court **ADOPTS** the magistrate judge's conclusion that summary judgment for Defendant, Brevard County Public Schools, is appropriate where this Court has found that there is no material issue of genuine fact that Plaintiff was not an eligible employee pursuant to 29 U.S.C. § 2611(12) as well as the magistrate judge's conclusion to grant summary judgment for Defendant as to the interference claim.

b.  The Court respectfully **DECLINES TO ADOPT** the magistrate judge's determination that there is a genuine issue of material fact regarding Plaintiff's retaliation

claim.  This Court concludes that there is no genuine issue of material fact and that summary judgment for Defendant is appropriate.

2.  The Court **SUSTAINS IN PART** and **OVERRULES IN PART** Plaintiff's Objections (Doc. 42) to the magistrate judge's Report and Recommendation filed December 12, 2006.

a.  The Court **SUSTAINS** Plaintiff's objection that the correct date of his email informing his employees that he was taking FMLA leave was April 29, 2004.

b.  The Court **OVERRULES** all of Plaintiff's other objections.

3.  The Court **SUSTAINS** Defendant's Objections (Dec. 43) filed December 4, 2006.

4.  The Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. 27), filed June 30, 2006.

5.  This case shall be removed from the February 2007 trial calendar.

6.  The clerk is directed to close the case.

7.  All other pending motions are denied as moot.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on February 13, 2007.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record